MAHER *vs.* J. F. & L. J. MILLER.

1. In employing a clerk to deliver sacks of meal and flour from a mill to a drayman, and to make out and send with each dray-load, a correct note of the number of the sacks put upon the dray, it is not immoral or illegal to stipulate (the drayman having contracted on like terms) that errors in delivery shall be charged to one and credited to the other; that is, that sacks unladen from the dray in excess of the number noted in the ticket, shall be credited to the drayman and charged to the clerk, and sacks noted but not brought on the dray from the mill, shall be charged to the drayman and credited to the clerk—thus making over-deliveries from the mill a gain to the drayman and a loss to the clerk, and under-deliveries, a loss to the drayman and a gain to the clerk; it being also a part of the regulations ·that the clerk's place is in the mill, and that the drayman is not to enter it, but receive at the door on the outside.

2. After the clerk has been settled with in full on the basis of the contract, and all his wages paid except an amount deducted, without distinct objection, for over-delivery, and after this amount has, without distinct objection, been paid to the drayman, it is too late for the clerk to bring an action against the employer for wages with a view to recover from him the amount so deducted, even if the drayman stole the sacks from the clerk instead of receiving them by an error in delivery, the employer not knowing by what means they were obtained.

• Contracts.  Actions.  Master and servant.  Before Judge
GIBSON.  Richmond Superior Court.  October Term, 1877.

Maher brought his action in a justice court against J. F.
& L. J. Miller for $6.50, under the circumstances detailed
in the head-notes.  The magistrate rendered judgment for
the plaintiff, stating that the evidence convinced him that
the missing sacks were stolen by the drayman.  On *certio-
rari* this judgment was reversed, whereupon the plaintiff
excepted.

J. GANAHL, for plaintiff in error.

H. CLAY FOSTER, for defendant, cited 3 *Ga.*, 106; 16 *Ib.*,
416, and some authorities on the maxim "*de minimis.*"

BLECKLEY, Justice.

1.  The contract was somewhat peculiar, but its object evi-
dently was, to prevent any combination between the clerk
and the drayman, to keep down disputes, and to stimulate
the vigilance of each in seeing that the count at the mill,
and the ticket representing the count, were correct.  The
rule established was something like that which is said to
prevail with banks, or some of them, of requiring mistakes
to be rectified at the counter before the customer withdraws.
The clerk and drayman were put upon equal and similar
terms.  Each assented to the terms as a part of the contract
of employment, and the purpose was to secure, not *out-
counting*, but correct counting.  The sum of the matter
was, that the clerk's ticket was to be conclusive evidence to
discharge the clerk and charge the drayman ; and, as the
effect of this was to give the clerk the benefit of all short
deliveries, if any by chance should occur, and to burden the
drayman to that extent in favor of the clerk, it was but fair
and equal, on the other hand, to give the drayman the ben-
efit of all over-deliveries that might by chance occur, and to
burden the clerk to that extent in favor of the drayman.

The standard was the ticket; and by that the proprietors of the mill settled with both parties. The proprietors claimed neither more nor less than the ticket called for; if the drayman produced less at the point where his dray was unloaded, the clerk was credited just as if all had been produced, and the drayman had to make good the deficiency; if he produced more, the proprietors did not take the benefit of the excess, but gave the drayman credit for it, and charged it to the clerk. The *shorts* were thus thrown on the drayman, and the *longs* on the clerk. The drayman received from the clerk at the door of the mill, outside of the building, and had no right to enter. The clerk's place was on the inside; these positions were assigned to the parties by the regulations. Not only was it the clerk's duty to protect himself by diligence in counting the sacks and in making out the ticket, but, as he was in charge of the stock and of the room which contained it, it was equally his duty to guard against theft by the drayman. He should have seen that the drayman did not enter but kept on the outside when he came for a load and a ticket. The terms of the contract were not immoral or illegal.

2. According to the evidence, the drayman, on one occasion, brought and turned over thirty-five sacks of meal, with a ticket for only thirty sacks. The value of the five sacks was $6.50. The clerk's wages for that week was eight dollars. The proprietors settled with both employees on Saturday evening, paying the clerk only one dollar and fifty cents; but to the drayman paying wages in full, together with the six dollars and fifty cents deducted from the clerk's wages on account of the five sacks of meal. The clerk made no distinct objection to the settlement, though he exhibited feeling against the drayman, and was dissatisfied with his conduct. He did not forbid the payment made to the drayman out of his own wages, nor warn the proprietors that he would hold them responsible. Shortly afterwards he brought suit on account for $6.50 as balance of wages; and though he insists that the drayman must have stolen the meal when

his (the clerk's) back was turned in the mill, he fails to show that the proprietors knew of, or suspected, the stealing at the time of the settlement. The circumstances indicate that they neither suspected it, nor had any cause to suspect it, beyond the fact that the clerk entertained the suspicion. If the clerk intended to urge the alleged larceny, he should have objected to the settlement in distinct terms, or given notice not to pay, before the payment was made to the drayman. If he can establish the stealing, he can recover from the drayman; but he was too late in making that question in a peremptory way with the proprietors, unless he could fix upon them the character of accomplices or guilty receivers, and this he has neither done nor attempted.

Judgment affirmed.